Watkins v. City of Wilmington

Reversed and remanded.

Judges HEDRICK and CLARK concur.

R. W. WATKINS, CLAIMANT v. CITY OF WILMINGTON, EMPLOYER, AND THE TRAVELERS INSURANCE COMPANY, CARRIER, DEFEND-ANTS

No. 755IC418

(Filed 18 February 1976)

1. **Master and Servant § 55— Workmen's Compensation Act — injuries compensable**

    To be compensable under the Workmen's Compensation Act, an injury must be an injury by accident arising out of and in the course of the employment, the words "out of" referring to the origin or course of the accident and the words "in the course of" referring to the time, place, and circumstances under which it occurred.

2. **Master and Servant § 56— workmen's compensation — fireman on duty — repair of vehicle during lunch hour — "reasonable activity" — injury compensable**

    Finding by the Industrial Commission that plaintiff's injury arose out of and in the course of his employment and that his activity during which he sustained his injury was "a reasonable activity" was supported by competent evidence where such evidence tended to show that plaintiff who was a fireman was required by his employer to be on a tour of active duty which lasted twenty-four hours, plaintiff had to remain at the fire station during his entire tour of duty, firemen often made minor repairs to their automobiles on the fire station premises during their lunch hours, this practice was well known to plaintiff's superiors, and while working on the car of a co-employee during his lunch hour plaintiff sustained burns as the result of an explosion.

    Chief Judge BROCK dissenting.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 4 March 1975. Heard in the Court of Appeals 15 September 1975.

Plaintiff seeks compensation from his employer, City of Wilmington, and The Travelers Insurance Company, the employer's compensation carrier, for alleged injury by accident arising out of and in the course of employment.

The jurisdictional facts were stipulated.

The facts found by the hearing commissioner are in substance as follows:

Plaintiff, age 26, was employed as a fireman for approximately five and one-half years. When on active tour of duty his hours were from 8:00 a.m. to 8:00 a.m., then he was off duty for the next twenty-four hours. He eats and sleeps at the fire station during his twenty-four hours tour of duty. When he is off duty he is on call if an emergency should arise. He drives his personal car to and from work and uses it to report to duty in an emergency at times when he is off duty.

On 18 October 1973 plaintiff was on his tour of duty at the No. 3 Fire Station in Wilmington. A fellow employee had taken the oil breather cap off the motor of his 1965 Chevrolet automobile and was attempting to clean it during lunch time. Plaintiff inspected the oil breather cap and found it to be dirty and clogged up. It was decided that they would put gasoline on the oil breather cap and set it on fire in order to clean it. The cap was placed on the ground and gasoline was put on the cap and set on fire. After the fire had gone out the cap did not appear to be clean and the plaintiff decided to put some more gasoline on the cap. There was an explosion as he started to pour gasoline on the cap and the plaintiff was burned about the face, hands, and arms. He was taken to the hospital where examinaton revealed first and second degree burns on the face and upper extremities and third degree burns on the left arm. He was under treatment from 18 October 1973 through 18 December 1973 and out of work from 18 October 1973 to 3 December 1973. He suffered bodily disfigurement such as would hamper him in his earnings and in seeking employment.

The hearing commissioner concluded that plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant and awarded compensation for temporary total disability, compensation for disfigurement, medical expenses, attorneys fees and costs.

Pursuant to defendants' notice of appeal and application for review, the case was heard by the Full Commission (Commission) as provided in G.S. 97-85. The Full Commission, Commissioner Vance and Commissioner Stephenson concurring, Chairman Robert S. Brown, dissenting, adopted as its own the opinion and award of Deputy Commissioner Delbridge and affirmed the results reached therein.

*Addison Hewlett, Jr., for plaintiff appellee.*

*Marshall, Williams, Gorham and Brawley, by A. Dumay Gorham, Jr., for defendant appellants.*

MARTIN, Judge.

[1] To be compensable under the Workmen's Compensation Act, an injury must be an " . . . injury by accident arising out of and in the course of the employment." G.S. 97-2(6). "The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place, and circumstances under which it occurred. (Citations omitted.) There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. (Citation omitted.)" *Conrad v. Foundry Company,* 198 N.C. 723, 153 S.E. 266 (1930).

Unquestionably, plaintiff's injury by accident occurred "in the course of" his employment. It occurred during his lunch hour on 18 October 1973, when, as required by the terms of his employment, he was on duty at the No. 3 Fire Station in Wilmington. Whether his injury arose "out of" his employment is the determining question. "Whether an accident arises out of the employment is a mixed question of fact and law, and the finding of the Commission is conclusive if supported by any competent evidence; otherwise, not." *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963).

"Specific findings of fact by the Industrial Commission are required. These must cover the crucial questions of fact upon which plaintiff's right to compensation depends. (Citations omitted.) Otherwise, this Court cannot determine whether an adequate basis exists, either in fact or in law, for the ultimate finding as to whether plaintiff was injured by accident arising out of and in the course of his employment. (Citation omitted.)" *Guest v. Iron & Metal Co.,* 241 N.C. 448, 85 S.E. 2d 596 (1955).

In general terms, the Industrial Commission found as a fact and concluded that plaintiff's injury arose out of and in the course of his employment. The Full Commission affirmed the opinion and award of the hearing commissioner, and stated that the Full Commission was of the opinion that " . . . this

was a reasonable activity and the risk inherent in such activity was a risk of the employment."

In construing Workmen's Compensation acts, "[t]his and other courts of the United States have held that the various compensation acts should be liberally construed so that the benefits thereof should not be denied upon technical, narrow and strict interpretation. The primary consideration is compensation for injured employees." *Barbour v. State Hospital*, 213 N.C. 515, 196 S.E. 812 (1938). Various tests have been applied by the courts in determining whether an injury arose out of and in the course of the employment in order to be compensable under such an act.

The North Carolina Supreme Court in *Lee v. Henderson*, 284 N.C. 126, 200 S.E. 2d 32 (1973), stated the rule applicable when the employee has been directed as part of his duties to remain in a particular place or locality until directed otherwise or for a specified length of time, as follows: " 'In those circumstances, the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment.' "

Briefly, the factual situation in the *Lee* case is as follows: Plaintiff, a salesman employed by a cabinet manufacturer, worked in his employer's shop during his training period and obtained permission from his superiors to build a doghouse for his own use from scrap material during working hours when he had nothing else to do. Each of the employer's salesmen was required to work in the shop every third Saturday. While on duty in the shop one Saturday plaintiff cut some cabinet parts and, during a lull, resumed work on his uncompleted doghouse and injured himself with an electric saw. A practice or custom had been established by the employer, allowing its employees to use its equipment for personal projects.

The Court held that plaintiff's use of the employer's electric saw was a reasonable activity and the risk inherent in such activity was a risk of the employment; therefore, plaintiff's injury arose out of his employment within the meaning of the Workmen's Compensation Act.

Defendants earnestly argue that the factual setting of the *Lee* decision had all the earmarks of the traditional North Carolina cases in which the concept of reasonableness was utilized

in arriving at the appropriate determination of a Workmen's Compensation claim. They further contend that, traditionally, the concept of reasonableness has been tied to the concept of work-related risks and that the *Lee* decision can best be explained by that approach. They argue that it is obvious from the facts in the *Lee* decision that the employee was engaged in an activity which the employee normally performed as a regular duty or service of his employment; that the employee had received the express consent of the employer to engage in the activity; that he had received assistance from his immediate supervisor or foreman; and, that it was against this factual background that the Supreme Court classified the activity as a reasonable activity.

Defendants' counsel discusses, in his well documented brief, the decisions cited and relied on by our Supreme Court in establishing the reasonable activity doctrine. He contends that with one exception, all of the decisions could easily have been decided by the traditional "work-related risk test." Further, he argues, that "since a true application of the 'reasonable activity' doctrine entirely disregards the work-related risk test, some clarification is needed with respect to whether or not the 'reasonable activity' doctrine was, in fact, adopted in its pure form by the North Carolina Supreme Court in the *Lee* decision."

In *Lee* the Court said: "On this appeal, we need not decide whether we should adopt a rule similar to that enunciated in the cited decisions of the Supreme Court of New Hampshire." However, it then went on to say that, "under the circumstances of the present case," plaintiff's use of employer's electric saw and 'scrap' material during the Saturday morning lull was a *reasonable* activity and that the risk inherent in such activity was a risk of the employment. Thus, the reasonable activity rule was adopted by our Supreme Court in the *Lee* decision, was applied to the factual situation, and was determinative of the holding therein.

[2]    In the present case, there was competent evidence to support the hearing commissioner's findings that plaintiff was required by his employer to be on a tour of active duty which lasted twenty-four hours, from 8:00 a.m. until 8:00 a.m. the next day; that he had to remain at the fire station during this entire tour of duty; that firemen often made minor repairs to their automobiles on the fire station premises during their lunch hours, and this practice was well known to plaintiff's superiors;

and that while working on the car of a co-employee during his lunch hour on 18 October 1973, plaintiff was injured.

Further, there was competent evidence to support the Full Commission's specific finding of fact that: " . . .[t]his was a reasonable activity . . . . " Thus, the findings of the Industrial Commission are conclusive on this Court since they are supported by competent evidence and since the proper test in North Carolina, i.e., the "reasonable activity doctrine" was applied to those findings.

Under the circumstances of the present case, we hold that plaintiff's cleaning of the oil breather cap from a co-employee's car during his lunch period was a reasonable activity and that the risk inherent in such activity was a risk of the employment.

Affirmed.

Judge VAUGHN concurs in result.

Chief Judge BROCK dissenting:

I do not think the activity in this case fits either the "work-related risk test" or the "reasonable activity" doctrine if such doctrine was in fact adopted in *Lee v. Henderson,* 284 N.C. 126, 200 S.E. 2d 32 (1973).