The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Laura Kranifeld Mavretic, now Commissioner, and the briefs and oral arguments before the Full Commission. Defendants, on their appeal, have not shown good ground to reconsider the evidence, receive further evidence, or to amend the Opinion and Award. In his cross-appeal, plaintiff has shown good ground to reconsider the evidence. Upon reconsideration of the evidence the Full Commission reverses the Deputy Commissioner's Opinion and Award in part and enters the following Opinion and Award.
* * * * * * * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
The objections raised by counsel at the depositions of Dr. Robert Price, Dr. Lee Whitehurst, and Dr. Williahem Somers are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
* * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in Industrial Commission Form 21 (I.C. #091107), approved by the Commission on 11 February 1991, and in a Pre-Trial Agreement dated 5 July 1994, as:
STIPULATIONS
1. At the time of the injuries giving rise to these claims, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. National Union Fire Insurance Company was the compensation carrier on the risk.
4. In I.C. #091107, plaintiff's average weekly wage was $304.00, yielding a compensation rate of $202.67.
5. Plaintiff suffered a back injury in a specific traumatic incident that occurred on 25 September 1990, that arose out of and in the course of his employment with defendant-employer.
6. The parties stipulated into evidence the Industrial Commission Forms and medical records as shown on the Pre-Trial Agreement as Exhibits A-J and L-P.
7. A letter dated 7 May 1992 from defendant-employer to plaintiff and Plaintiff's Answers to Interrogatories were stipulated into evidence.
* * * * * * * * * * *
The Full Commission rejects in part the findings of fact found by the Deputy Commissioner and enters the following:
FINDINGS OF FACT
1. At the time of the initial hearing in this matter, plaintiff was thirty-eight years old. He was born in Mexico City and finished high school and attended college in that country. At the initial hearing plaintiff was assisted in his testimony by a Spanish-English translator.
2. Plaintiff began his employment with defendant-employer in July 1990. He was a general laborer in a heavy construction job.
3. On 25 September 1990, plaintiff injured his back in a specific traumatic incident that arose out of and in the course of his employment with defendant-employer. Plaintiff and a co-worker were pulling up a steel girder by a rope to a site above the first story of the building under construction when he felt a pull in his back.
4. Following the compensable incident, plaintiff received conservative treatment from Dr. P. R. Marquez. Because of plaintiff's continued complaints of pain, on 19 November 1990 Dr. Marquez referred plaintiff to Dr. E. O. Marsigli. Dr. Marsigli then referred plaintiff for a MRI to determine the extent of his injuries. The 21 November 1990 MRI revealed that as a result of the 25 September 1990 injury by accident plaintiff sustained a bulging disc at L4-5 and L5-S1 and that he had mild degenerative disc disease.
5. As of 3 December 1990 it was the opinion of Dr. Marsigli that plaintiff was unable to return to his former position with defendant-employer until plaintiff underwent a myleogram, lumbar laminectomy and fusion surgery. Following this recommendation, defendants requested a second opinion from Dr. Lee A. Whitehurst.
6. On 13 December 1990, plaintiff was examined by Dr. Whitehurst who released him to return to regular work with restrictions of no lifting over fifty (50) pounds. Defendant-employer paid temporary total disability compensation to plaintiff from 6 October 1990 through 13 December 1990.
7. Plaintiff returned to Dr. Whitehurst on 18 February 1991 complaining of continued back pain. Although he had informed plaintiff that he could resume his regular work, in order to evaluate plaintiff's condition and recommend further treatment alternatives, Dr. Whitehurst recommended that plaintiff undergo a discography. As of 13 March 1991, plaintiff was under the impression that defendants were not going to pay for any procedures and this impression was due in part to defendants' past actions regarding the recommendations of Dr. Marsigli and the language barrier which Dr. Whitehurst documents in his office notes. Further, having had the invasive procedure explained to him, plaintiff expressed confusion as to why it was recommended given that Dr. Whitehurst had also concluded that plaintiff was able to return to his regular job. Plaintiff therefore chose not to undergo the discography at that time.
8. The Full Commission finds that plaintiff's decision not to undergo the discography in March of 1991 was justified.
9. Based upon Dr. Whitehurst's opinion that plaintiff had no permanent partial impairment to his back, had reached maximum medical improvement and could return to regular work, and upon plaintiff's refusal to undergo the discography, defendant-employer filed a Form 24, Application to Stop Payment of Compensation, which was approved by the Industrial Commission on 10 April 1991.
10. On 4 October 1991, plaintiff agreed to undergo the discography which revealed an internal disc disruption at L4-5. After discussing treatment options, which included surgery, plaintiff elected not to undergo surgery at that time. Plaintiff was able to perform light duty work with a lifting restriction of thirty-five (35) pounds.
11. Following the discography, defendant-employer offered light duty work to plaintiff as a construction helper. Although within plaintiff's restrictions, the Full Commission finds that defendant-employer would not have hired a new employee just to perform the duties required by the construction helper job. Further, the Full Commission finds that other employers would not have hired an employee with plaintiff's limitations at a wage level comparable to that of the construction helper job offered to plaintiff.
12. The Full Commission finds that the light duty construction helper job offered to plaintiff by defendant-employer was a position specifically created for plaintiff and one not ordinarily available in the competitive job market.
13. Additionally, although within his restrictions, plaintiff justifiably refused the construction helper job because of the travel involved and the fact that plaintiff was in too much pain to travel the required distances.
14. On 23 August 1991, plaintiff began working on a part-time basis as a dishwasher for Hunan Garden Restaurant at wages of approximately $100.00 per week. He continued this employment until undergoing surgery on 11 February 1993.
15. On 11 February 1993, plaintiff underwent a bilateral L4-5 hemilaminectomy and diskectomy without fusion for nerve root swelling and compression at L4-5. This surgery was done by Dr. Robert Price, a neurosurgeon. Defendant-employer resumed payment of temporary total disability compensation to plaintiff as of 11 February 1993.
16. As of 10 August 1993, plaintiff had reached maximum medical improvement and was able to return to work with a lifting limitation of forty to fifty (40-50) pounds.
17. As a result of the compensable incident on 25 September 1990, plaintiff has a fifteen (15) percent permanent functional impairment of his back.
18. Plaintiff returned to work for defendant-employer on 4 October 1993. He returned to the construction helper position which had been offered to him previously by defendant-employer.
19. On 5 October 1993, plaintiff had been assigned to help a co-worker, Donald Adcock, install metal frames and doors. At some point during that day, he picked up a metal bar which was used in installing a door at the job site. As he lifted the bar, he felt a twitch in his left knee. He proceeded to lift the bar and carried it approximately ten to fifteen (10-15) feet. He continued to work the rest of that day. After he got home that night, he began feeling pain in his left knee. Lifting objects the size and weight of the metal bar, which weighed approximately ten to twelve (10-12) pounds, was a part of the normal job duties of the construction helper position.
20. On 6 October 1993, plaintiff contacted the personnel manager, Max Dixon, and informed him that he was feeling pain in his left leg. Plaintiff then left the construction helper position with defendant-employer. At the time of the hearing, plaintiff continued working at the Hunan Garden Restaurant.
21. On 5 October 1993, plaintiff was performing his duties in the usual and customary manner, and there was no interruption in the normal work routine likely to result in unexpected consequences.
22. Plaintiff received medical treatment from Dr. William Somers for the knee injury. There is insufficient medical evidence of record from which to prove by its greater weight that plaintiff sustained any permanent functional impairment of his knee.
23. Pursuant to an Industrial Commission Form 21, approved by the Commission on 11 February 1991, plaintiff received temporary total disability compensation from defendants at the rate of $202.67 per week from 6 October 1990 through 13 December 1990; and pursuant to an Industrial Commission Form 26, approved by the Commission on 8 July 1993, plaintiff received temporary total disability compensation from defendants at the rate of $202.67 per week from 11 February 1993 through 3 October 1993.
24. As the result of his injury by accident on 25 September 1990, plaintiff was unable to earn wages in his former position with defendant-employer or any other employment from 14 December 1990 through 22 August 1991.
25. As a result of his injury by accident on 25 September 1990, plaintiff's wage earning capacity was diminished from $304.00 per week, which he earned at the time of the injury by accident, to $100.00 per week from 23 August 1991 through 10 February 1993 and continuing from 4 October 1993.
* * * * * * * * * * *
Based on the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the compensable injury by accident on 25 September 1990, plaintiff was disabled from work and is entitled to receive compensation for temporary total disability at the rate of $202.67 per week for the period from 14 December 1990 to 22 August 1991. N.C. Gen. Stat. § 97-29.
2. As a result of the compensable injury by accident on 25 September 1990, plaintiff is entitled to temporary partial disability at a weekly rate of two-thirds the difference between his average weekly wage when his disability began and his capacity to earn an average weekly wage on 23 August 1991 and on 4 October 1993, or .667 x ($304.00 — $100.00)} $136.07 per week for the period from 23 August 1991 to 10 February 1993 and then continuing from 4 October 1993 for a total of three-hundred (300) weeks from the date plaintiff's disability began on 14 December 1990, less the periods for which he received temporary total disability compensation. N.C. Gen. Stat. § 97-30.
3. Although plaintiff received a fifteen (15) percent permanent partial disability rating and would have been entitled to the appropriate compensation for forty-five (45) weeks pursuant to G.S. § 97-31(23), he has elected the more beneficial recovery offered under the terms of G.S. § 97-30.
4. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of his compensable injury on 25 September 1990, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25 (before amendment).
5. For an injury to be compensable, it must be shown to have resulted from an accident arising out of and in the course of employment. Perry v. American Bakeries Co., 262 N.C. 272,136 S.E.2d 643 (1964).
6. Plaintiff's left knee injury was not sustained as a direct result of an accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
7. Plaintiff's claim for compensation for his left knee, therefore, is not compensable under the North Carolina Workers' Compensation Act. Id.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses in part the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $202.67 per week for the period from 14 December 1990 through 22 August 1991. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendant-employer shall pay plaintiff temporary partial disability compensation at the rate of $136.07 per week from 23 August 1991 through 10 February 1993 and then continuing from 4 October 1993 for a total of three-hundred (300) weeks from the date plaintiff's disability began on 14 December 1990, less the periods for which plaintiff received temporary total disability compensation and subject to the attorney fee approved hereinafter. Such amount as has accrued shall be paid to plaintiff in a lump.
3. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury on 25 September 1990, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and tend to lessen plaintiff's period of disability, when bills for the same have been submitted to defendants and approved pursuant procedures established by the Industrial Commission.
4. A reasonable attorney's fee of twenty-five (25) percent of the compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel with the amount having accrued to be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel and with plaintiff's counsel receiving every fourth check payable to plaintiff thereafter.
IT IS FURTHER ORDERED:
1. Under the law, plaintiff's claim for compensation for the injury to his left knee must be and the same is hereby DENIED.
2. Defendants shall pay the costs.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ JOHN A. HEDRICK DEPUTY COMMISSIONER