In accordance with the directives of the North Carolina Supreme Court, the Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties prior to and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Luis Alfredo Roman, deceased employee, (Roman) was killed at about midnight on April 7, 1994, at the Flying J Truck Stop in Gary, Indiana.
2. At the time of his death, Roman, was employed by defendant-employer as a long distance truck driver and had stopped at the Flying J Truck Stop which was en route from Chicago, Illinois to Rocky Mount, North Carolina.
3. At the time of Romans death, the parties were bound by the North Carolina Workers Compensation Act.
4. At the time of Romans death, Riscorp of N.C. was the compensation carrier on the risk.
5. The Form 22 Wage Chart attached hereto shows the wages paid to Roman during the year 1994 in the amount of $6,268.08.
6. At the time of his death, Roman was married to Mayra E. Roman and they had four children, all of whom were dependent upon Roman as follows:
Age Relationship
Isid R. Roman 16-1/2 years Son
Noemi E. Roman 14 Daughter
Oscar A. Roman 10-1/2 Son
Jessica C. Roman 8-1/2 Daughter
7. Defendants response to plaintiffs Interrogatories and Request for Production of Documents may be admitted into evidence and considered by the Court in making its decision.
8. Plaintiffs Request for Admissions including the Stipulation of Facts contained in Request for Admission No. 1 and Exhibits 1 through 11 which are records of the Gary, Indiana Police Department are admitted and may be considered by the Court in making its decision.
9. Plaintiff will secure evidence of the burial expenses of the deceased employee for submission to the Court.
10. Defendants response to plaintiffs Interrogatories and Request for Production of Documents have been marked as "stipulated exhibit 2 and received into evidence.
12. Plaintiffs "Request for Admissions, including the "Stipulation of Facts contained in "Request for Admission No. 1 and Exhibits 1 through 11 which are records of the Gary, Indiana Police Department have been marked as "stipulated exhibit 3 and received into evidence.
 ***********
In accordance with the directives of the North Carolina Supreme Court, and based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Deceased-employee, Luis Roman, was employed by defendant-employer as a long distance truck driver. On April 7, 1994, Mr. Roman had been dispatched to pick up a load of furniture at Douglas Furniture in Chicago, Illinois, and was en route to Helig-Meyers Furniture in Rocky Mount, North Carolina.
2. Mr. Roman was authorized to charge the gasoline needed for the truck he drove for defendant-employer at Flying J Truck Stops. After leaving Chicago on April 7, 1994, he stopped to purchase gas at the Flying J Truck Stop in Gary, Indiana.
3. The Flying J Truck Stop in Gary, Indiana was located on the normal route of travel for the delivery of shipments from Chicago, Illinois to Rocky Mount, North Carolina.
4. Mr. Roman had last purchased gas in Wytheville, Virginia on April 7, 1994.
5. The Flying J Truck Stop was a dangerous location prior to April 8, 1994. The Truck Stop had employed two armed security guards to provide security prior to April 8, 1994.
6. On or about April 8, 1994, at 12:00 a.m., Mr. Roman was located inside the Flying J convenience store-restaurant when Robert Bankston stole seventy dollars from an open cash register operated by Kathy Adams. Ms. Adams screamed for help. The fuel desk cashier, Dona Becker, was at the fuel desk counter inside the store when the robbery by Mr. Bankston took place. Ms. Becker "yelled," stop him. (See police interview with Ms. Becker in set of documents marked "stipulated exhibit 2.) Ms. Becker ran out of the store at that time.
7. Pursuant to the screams of both Ms. Adams and Ms. Becker, Luis Roman and another truck driver chased Mr. Bankston out of the store. Bankston entered a Ford Escort and attempted to drive away. Mr. Roman grabbed the steering wheel of the Ford Escort and forced Bankston to drive in circles in the Flying J Truck Stop parking lot. At some point, Mr. Roman was able to position himself through the window of the Ford Escort on the drivers side.
8. Robert Bankston did not attempt to run over the security guards or anyone else during his escape attempt while operating the Ford Escort in the Flying J Truck Stop parking lot. Bankston did not threaten the security guards. The security guards did not yell any warnings prior to discharging their firearms.
9. Mr. Roman was shot and killed by one of the security guards while he was positioned inside the window of the Ford Escort.
10. The use of deadly force by one of the security guards employed by the Flying J Truck Stop while responding to a robbery was the proximate cause of Luis Romans death.
11. Plaintiffs job duties included performing activities that will help the public like truck drivers better. The defendant-employer provided a drivers handbook and safety manual that expressly informed its employees that their jobs as truck drivers as well as the future of the company and the trucking industry depended upon good public relations.
12. On or about April 8, 1994, Mr. Roman had not yet purchased gas when the robbery took place at the Triangle J Truck Stop.
13. The defendant-employer required the plaintiff to maintain detailed records concerning fuel purchases. Plaintiff had to keep records that included the date of purchase, the name and address of the seller, number of gallons purchased, type of fuel purchased, price per gallon, and the unit number of the vehicle into which the fuel was placed or license number. Fuel receipts which contained alterations or erasures would not be accepted by the defendant-employer. These records had to be maintained in order to receive a credit for fuel tax paid by the defendant-employer and/or Mr. Roman. These records were also necessary to be maintained in order to answer any questions that might arise over tax deductions the defendant-employer would have taken for reimbursing Mr. Roman for fuel that he purchased to operate his truck.
14. Kathy Adams and/or Dona Becker would have been the likely persons to have provided the plaintiff with an acceptable receipt and an appropriate address for their employer.
15. Mr. Romans attempt to apprehend Bankston was for the benefit of a third party only, and is characterized as "chivalric or "an errand of mercy, and were not beneficial to his employer or to himself as his employers employee.
 ***********
In accordance with the directives of the North Carolina Supreme Court, and based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An employees claim for workers compensation is compensable if he acts for the benefit of his employer to an appreciable extent. Guest v. Brenner Iron Metal Co., 241 N.C. 448, 85 S.E.2d 596
(1955). "Acts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts. . . . Id.
2. An injury arises out of ones employment "when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal connection between the injury and the performance of some service of the employment. Perry v. American Bakeries Co., 262 N.C. 272,274, 136 S.E.2d 643, 645 (1964). Further, when at the time and place of injury mutual aid is being exchanged between the employee on behalf of the employer and the third party, and the aid received and the aid given are so closely interwoven that the employee has good grounds to believe his refusal to supply assistance might result in the third-partys refusal to provide the gratuitous benefit to the employer, the resulting injury would be compensable. Guest v. Brenner Iron Metal Co., 241 N.C. 448,85 S.E.2d 596 (1955).
3. In this case, the Supreme Court determined that defendant-employer and the Flying J were not engaged in a gratuitous reciprocal exchange of assistance; nor did plaintiffs required travel as a truck driver increase his risk that he would incur injury attempting to effect a rescue. Accordingly, the decedent is not eligible for compensation benefits under the Act. Roman v. Southland Transportation Co., 350 N.C. 549, 515 S.E.2d 214
(1999).
 ***********
In accordance with the directives of the North Carolina Supreme Court, and based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. In accordance with the law, plaintiffs claim must be and is hereby DENIED.
2. The parties shall divide the costs of this action.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER